ANSHUTZ v. CAMPBELL. See Case No. 17,-796.

## Case No. 479.

### The ANTARCTIC.

[1 Spr. 206;¹ 15 Law Rep. 578.]

District Court, D. Massachusetts. Dec., 1852.

MARITIME LIENS — MATERIALS FOR CONSTRUCTION —MASSACHUSETTS ACT OF 1848 — CREDIT —PAYMENT APPLIED TO THE DEBT SECURED BY LIEN.

1. Under the Massachusetts statute of 1848, (chapter 290, § 1,) the lien upon a new vessel for materials furnished is only for those actually used in her construction.

[Cited in The James H. Prentice, 36 Fed. 781.]

2. Where, in the purchase of materials to be used in the construction or repair of a vessel, a credit is given, which, it is known by the parties, will expire before the completion and sailing of the vessel, the lien is not thereby extinguished.

3. When there are two debts, one secured by a lien and the other not so secured; and a general payment is made by the debtor, without any appropriation thereof at the time it is made, either by the debtor, or by the creditor with the actual or presumed assent of the debtor, the law will appropriate it to the extinguishment of the debt secured by the lien.

[Cited in The A. R. Dunlap, Case No. 513; The J. F. Spencer, Id. 7,316; The Lady Franklin, Id. 7,984; Schuelenburg v. Martin, 2 Fed. 749.]

¹[Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]

In admiralty. Libel in rem, by Gurdon Waterman [against the ship Antarctic] to recover a balance of $1048 claimed to be due on account of materials furnished for the ship Antarctic, by virtue of the lien given by the statute of Massachusetts of 1848, c. 290, § 1, which provides that "whenever a debt is contracted for labor performed, or materials used in the construction or repair, &c., of any vessel within this commonwealth, such debt shall be a lien," &c. It appeared in evidence that the libellant, in pursuance of a contract with Cannon & Lewis, the ship-builders, delivered a quantity of lumber valued at $1148, at their ship-yard, while the Antarctic was building. The evidence, as to what portion of this identical lumber was actually used in the ship, was conflicting. The lumber was originally purchased upon a credit of four months. On the 1st of January, 1852, the builders made to the libellant a cash payment of $100, and gave their promissory negotiable note, payable at the Marine Bank, in New Bedford, without interest, for $400 more. The note was dated Jan. 6th, 1852, and was payable in four months. The Antarctic was libelled April 28th, and sailed in May following. The points taken by the respective counsel, and the facts in the case, sufficiently appear in the opinion of the court.

T. G. Coffin, for libellant.

R. C. Pitman and J. C. Stone, for respondents.

SPRAGUE, District Judge. The first question is, whether the libellant has any lien. It is contended by the claimant, that in order to create a lien, the materials should have been originally furnished for this specific ship, and I have been referred to the case of The Calisto, [Case No. 2,316.] But the language of the Maine statute, under which that decision was made, is different from the Massachusetts statute. The former requires the materials to be furnished for, or on account of, the ship; the latter, that they should be used in the ship. In this case, the ship was in the process of building; the lumber was delivered to the builders, at their yard, and was suitable for this ship, and so far as it was actually used in her construction, the presumption is, that it was purchased for that purpose. It is said, that the construction of the statute contended for, will give a general and indefinite lien, following the property through any number of intermediate hands. But where the circumstances plainly show a personal credit, and negative the idea of any other, the lien will not exist. When a man sells to a mere lumber dealer, he certainly trusts to individual credit; and generally, when he sells to one not a builder, he has no lien. The debt is to be created for materials to be used in the ship. I

think, in this case, there is a prima facie lien. On the other hand, it is contended by the libellant, that there is a lien for the whole amount, whether used or not, if it were apparently furnished for the ship. But I cannot say, that if it were furnished for the ship, it would create a lien, unless used. That is the language of the statute, and is equitable. The merchant, contracting with, or purchasing of, the builders, may know what amount of materials has gone into the ship, and may guard himself to that extent; but he cannot know what amount the builders may have purchased. The equity of the law is, that the materials and labor put into the vessel, shall be held as security to those who furnished them. The Kearsarge, [Case No. 7,634;] The Kiersage, [Id. 7,762;] 1 Pars. Mar. Law. 493–496.

The second question is, whether such a credit as was given by the original contract, excludes the idea of a lien. When the original credit was given, it was known by the parties that it would expire before the completion or sailing of the vessel, and I think there is nothing in it inconsistent with the existence of the lien. Such a credit only suspends the remedy, until it expires.

[The more important question is as to the application and effect of the note which was given. This note was not due when process was commenced, and the credit given by it at least suspended the remedy, if it did not displace the lien. As to this amount, then, the suit was clearly premature. But the claimants contend that the note was absolute payment pro tanto. By the law of Massachusetts and Maine, a negotiable promissory note is prima facie payment. It is otherwise in most of the other states. The case of The Chusan, Case No. 2,717, was decided according to the local law of New York. In the present case, the law of Massachusetts must govern the contract. There is nothing in the case to repel the presumption of payment.][2] By the evidence it is shown, that the note for $400 was an absolute payment pro tanto, and it remains to consider how this amount, and the $100 paid in cash, shall be appropriated. The libellant contends, that, if it appears that for a portion of the lumber purchased he has no lien, then this payment shall be applied to discharge the portion of the debt not thus secured; while the claimant contends that the payment shall be applied to the extinguishment of the lien. This leads us to consider the doctrine of the appropriation of payments. The books abound with very conflicting opinions on this subject. The language of different cases is not capable of being reconciled. But I think we shall find the dicta more contradictory than the decisions. The disposition to generalize has led to much of the difficulty. Thus, the

strongest case cited for the libellant, Upham v. Lefavour, 11 Metc. [Mass.] 174, contains the general proposition, that the creditor may appropriate a payment to discharge a portion of the debt that has no security; but the circumstances of that case were very peculiar, and required no such dictum to support the decision. (The judge here entered upon a critical examination of the facts in that case, and the grounds upon which the decision might properly be placed.) The authorities agree that, in the first instance, the debtor may appropriate; that, failing to do so, the creditor may appropriate at the time; but, beyond this point, the decisions are not uniform. It is held, in some of the cases, that the creditor has the right of appropriation, even up to the last moment, and may change a prior application made by him. But I think the true rule is otherwise, and is that which is substantially laid down in the cases. Gass v. Stinson, [Case No. 5,262;] Pattison v. Hull, 9 Cow. 773; Warren v. Warren, 6 Law Rep. 501. All the authorities agree in one point, that the debtor, when he pays, has a right to say to what debt the payment shall be appropriated; and this for the obvious reason, that the debtor might withhold the payment, and if the creditor receives it, he must take it on the terms offered by the debtor. Now, it is said, that the debtor failing to exercise the right, it passes to the creditor. Why so? What equity is there in giving this right to the creditor, at any subsequent period? If the creditor appropriates it at the moment, and with the knowledge of the debtor, and he is silent, there is a presumed assent to the application. Otherwise the law ought to appropriate. But on what principles? The Roman law adopted the rule of appropriation, sanctioned in the case of Gass v. Stinson, [supra,] and the other cases above cited, viz., that the application was to be made as the defendant would have made it, if he had expressed his choice at the time. Thus, where there are two debts, one secured by a penalty and the other not, or one bearing interest and the other not, the payment, in both cases, is to be applied to discharge the former, according to the presumed intent of the debtor. I am satisfied, that the law applies the same principle, in case of a debt in part secured by a lien; that the debtor would naturally intend to relieve his property from incumbrance. He had the original right of appropriation, but it not having been made by either party, the law comes in and makes it, as it presumes the debtor would have done. The case cited of Harker v. Conrad, 12 Serg. & R. 301, fully sustains this view, and the present case is stronger in favor of the claimant. The case in Pennsylvania, was one of lien and a general payment, and the court held that the builder was bound in conscience, to have relieved the property sold by him, from in-

[2][From 15 Law Rep. 578.]

cumbrance; and, therefore, he must be presumed to have intended so to do. But from the circumstances of that case, it is doubtful whether it was his pecuniary interest to do so. The presumption was certainly a charitable one. But, in the present case, both the obligation and interest of the builders required them to deliver the ship to the claimant free of all incumbrances, for he had made advances to the builders equal to the value of the vessel. It is therefore to be presumed, that they would have so appropriated the payments as to effect this object. I shall therefore appropriate the $500, toward satisfaction of the part secured by the lien.

The last question to be considered is, what was the amount of materials used in this ship, for which a lien existed? The amount is left somewhat indeterminate, but on the whole I must take the builders' testimony as most satisfactory, and shall fix the amount at $700. From this the $500 is to be deducted, and a decree will be entered for the balance, $200, and costs.